784 P.2d 295

**Jack E. GARDNER,
Petitioner Employee,**

v.

**The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,**

**Marley Cooling Tower,
Respondent Employer,**

**Argonaut Insurance Company,
Respondent Carrier.**

No. 2 CA–IC 89–0018.

Court of Appeals of Arizona,
Division 2, Department A.

Dec. 12, 1989.

Tretschok, McNamara & Clymer, P.C. by Jeffrey L. Patten, Tucson, for petitioner employee.

Anita R. Valainis, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Bury, Moeller, Humphrey & O'Meara, P.C. by J. Michael Moeller, Tucson, for respondent employer & respondent carrier.

OPINION

HOWARD, Judge.

In this special action the employee questions the appropriateness of the Administrative Law Judge's (ALJ) suspension of temporary disability compensation pursuant to A.R.S. § 23–1026(A), (B) and (C), which provides:

§ 23–1026. **Periodical medical examination of employee; effect of refusal or obstruction of examination or treatment**

A. An employee who may be entitled to compensation under this chapter shall submit himself for medical examination from time to time at a place reasonably convenient for the employee, if and when requested by the commission, the state

compensation fund, his employer or the insurance carrier. A place is reasonably convenient even if it is not where the employee resides if it is the place where the employee was injured and the employer or the insurance carrier pays in advance the employee's reasonable travel expenses, including the cost of transportation, food, lodging and loss of pay, if applicable.

**B.** The request for the medical examination shall fix a time and place having regard to the convenience of the employee, his physical condition and his ability to attend. The employee may have a physician present at the examination if procured and paid for by himself.

**C.** If the employee refuses to submit to the medical examination or obstructs the examination, his right to compensation shall be suspended until the examination has been made, and no compensation shall be payable during or for such period.

   \*    \*    \*    \*    \*    \*

On May 17, 1983, Gardner filed a claim for workers' compensation benefits for a neck injury he sustained while working for Marley Cooling Tower. The workers' compensation insurance carrier accepted the claim and thereafter, by Notice of Claim Status, closed the claim effective June 23, 1983, with no permanent disability.

On March 20, 1986, Gardner filed a Petition to Reopen his claim. The carrier denied that petition by Notice of Claim Status issued April 3, 1986, and Gardner protested this denial which resulted in a hearing held on October 9 and November 13. The transcript of the November 13 hearing reflects that the ALJ made the following statement:

> My review of the evidence is that the Petition to Reopen should be accepted on both the psychiatric and physical condition for the purpose of conducting an MRI [this is a neurological scan]; and the psychiatric grounds, by unanimous opinion of both psychiatrists who have seen Mr. Gardner.

Subsequently, the ALJ rendered his decision, but nowhere in the decision, findings or award is the MRI scan mentioned.

By Notice of Claim Status issued March 18, 1988, the carrier placed Gardner on temporary partial disability status as of March 2, 1988, and simultaneously closed the claim effective March 2 with some permanent disability. Gardner protested this notice and, pursuant to his requests, formal hearings were held before the ALJ. At the hearings Gardner testified on direct examination that although he had scheduled an MRI on several occasions, he had not been able to make it to the appointments because his car had broken down and that he could not follow up on it because he could not afford to keep putting his cars together.

In the findings and award made after the hearings, the ALJ found that Gardner still needed an MRI and awarded temporary partial disability compensation from March 2, 1988, until Gardner either reverts to temporary total disability status or becomes medically stationary subject to a suspension which the ALJ assessed in finding # 10. With regard to this suspension the ALJ stated:

> 10. ... However, in order to achieve "substantial justice" as mandated by A.R.S. § 23–941(F), and noting the multiple missed MRI scans, the applicant's entitlement to compensation should be, and hereby is, suspended pursuant to A.R.S. § 23–1026(C) from August 2, 1988 until such time as he attends an MRI scan promptly set at his reasonable convenience, or establish his good cause for his failure to attend any such examination.

The ALJ subsequently modified the period of suspension of Gardner's benefits from the original period of August 2, 1988, through the date of an MRI to August 2, 1988, though October 5, 1988, and again from January 7, 1989 through the date Gardner obtains an MRI.

Although Gardner attacks the suspension of his benefits on more than one ground, we need only discuss one of them. The record is clear that no request for an

MRI fixing the time and place for such exam was ever made by the commission, the compensation fund, the employer or the carrier as is required by A.R.S. § 23–1026. The statement by the ALJ at the November 13, 1986 hearing was insufficient to invoke the sanctions of A.R.S. § 23–1026(E).

For the foregoing reasons the award is set aside.

ROLL, P.J., and HATHAWAY, J., concur.